[926 NYS2d 471]

BRUCKMANN, ROSSER, SHERRILL & CO., L.P., et al., Respondents,
v MARSH USA, INC., et al., Appellants.

First Department, June 28, 2011

---

### APPEARANCES OF COUNSEL

*Willkie Farr & Gallagher LLP*, New York City (*Christopher J. St. Jeanos* of counsel), for appellants.

*Anderson Kill & Olick, P.C.*, New York City (*Marshall Gilinsky, Finley T. Harckham* and *Diana Shafter Gliedman* of counsel), for respondents.

### OPINION OF THE COURT

ABDUS-SALAAM, J.

This action, which is before us for the second time on appeal, involves a dispute between plaintiff insureds (BRS) and their broker. The remaining causes of action sound in breach of contract and negligence. On this appeal, we are asked to determine, as a matter of law, whether the coverage afforded to BRS by its policy with American International Surplus Lines Insurance Company (AISLIC), placed by defendant Marsh, was limited by a "tie-in" provision, also referred to as an "anti-stacking" provision. We find that there is such a limitation of coverage. Thus, we affirm the motion court's denial of summary judgment to defendants, but for grounds other than those stated by the motion court, which found triable issues of fact.

BRS, a private equity fund, purchases and provides advice about selected business ventures (portfolio companies) for the fund's investors. BRS retained defendant Marsh as insurance broker to place insurance programs for BRS and its portfolio companies. This action arises out of BRS's request of Marsh to place $20 million in excess directors and officers (D&O) insurance for BRS.

According to BRS, it believed that it had such coverage through its policy placed by Marsh with AISLIC, an American Insurance Group (AIG) family company, until a suit was filed in 2001 (the Wells Fargo action) by the creditors' committee for Jitney-Jungle Stores of America, one of the portfolio companies, against, among others, Jitney's directors and BRS. The plaintiffs in that suit sought damages ranging up to $1 billion. Jitney was

insured by National Union, an AIG company, for $15 million. When Jitney and BRS notified AIG of the lawsuit and sought coverage under their respective $15 million and $20 million policies, AIG notified BRS that based on a limit of liability clause in BRS's policy with AISLIC (referred to by the parties as a "tie-in provision" or "non-stacking" provision), the combined limit of liability for this claim was $20 million for both policies. AIG took the position that based on this provision, its maximum aggregate limit for all losses arising out of this claim was $20 million (the greater of the limits of the BRS policy and the Jitney policy for $15 million). It is the interpretation of this provision which is the subject of this appeal.

BRS settled the Wells Fargo action for $33.5 million, and AIG paid $6.9 million in defending the suit, which was deducted from the limits of the Jitney policy. The total losses for BRS and Jitney thus amounted to $40,400,000. AIG paid the full $15 million policy limit under the Jitney policy, and pursuant to its claim that the tie-in provision capped BRS' coverage at $5 million (the amount remaining out of the $20 million coverage), paid that amount and refused to pay anything more. BRS was then faced with the choice of bringing an action against Marsh for its failure to procure the $20 million in excess insurance coverage that BRS maintains it requested, or, of first trying to obtain the unpaid portion from AIG. BRS offered to settle with Marsh and assign to Marsh its claims against AIG for the unpaid portion of the Wells Fargo claim, but Marsh declined. Accordingly, BRS and Marsh agreed to toll the statute of limitations on any malpractice claims against Marsh and to try to mitigate BRS's losses by suing AIG for the $15 million that BRS maintained it was entitled to under its policy with AISLIC.

BRS filed a suit against AIG and made a motion for partial summary judgment, arguing that because AISLIC was defined as the "Insurer" under the policy, the tie-in provision would only be triggered where two policies were issued by AISLIC. The reasoning was that because Jitney was insured by National Union, another AIG company, and not AISLIC, the tie-in provision did not apply to limit AISLIC's liability to less than the $20 million sought by BRS from AISLIC. AIG opposed the motion for summary judgment, arguing that BRS's interpretation of the tie-in provision did not make sense and was contrary to the intent of this and any other type of "anti-stacking" provision, and that the parties clearly intended for a maximum aggregate liability for multiple policies issued by AIG companies that implicated a single loss or covered event.

After the summary judgment motion was fully briefed, but before it was heard by the court, BRS agreed to settle the coverage action against AIG for $9 million out of the $15 million that it was seeking. As explained by BRS's counsel Mr. Zensky at his deposition, the motion was made before any depositions had been taken and at the very outset of document discovery. He advised BRS that it had the highest point of leverage with AIG in terms of settlement while the motion was pending, and that while he believed BRS had a good chance of prevailing on the summary judgment motion, it was not a slam dunk, and even if they won, there would be an appeal.* Zensky was questioned as to whether he recalled that Marsh had been sued by the New York Attorney General in connection with contingent commission agreements, and whether he had considered that this might be used as leverage against Marsh to settle BRS's claims in this case. Zensky replied that he did so recall, and that he believed it cast Marsh in an extremely bad light after learning from Marsh's counsel that the BRS policy was one of the policies that was in the Marsh unit receiving commissions, and that Marsh had been paid by AIG.

---

\* Another indication of Mr. Zensky's thoughts regarding settlement is reflected in an e-mail that he wrote to BRS memorializing his discussion with "Marsh's attorney." Although Marsh argues here that this e-mail is inadmissible hearsay and should not be considered by this Court, it may be considered, not for the truth of what is stated in that e-mail, but for what BRS's counsel believed to be the weaknesses in BRS's litigation with AIG. The e-mail states:

"1. Marsh's testimony will not likely be helpful to us. They read the clause as evidencing an intent to tie in the limits of all AIG companies. Further, they think the premium makes sense in that context.

"2. They have not made any further settlement overtures but will try if we want them to. They do not think they can get AIG close to $13M.

"3. I told him about our SJ motion—he agreed that it was sound strategically and could be our best chance to settle (given that the testimony all around will not be helpful in his view), especially while it is pending.

"4. Finally, as to the Marsh incentive agreements with AIG, he said it is almost a certainty that your policy counted towards AIG's payment (i.e. kickback) obligations to Marsh. I was astounded he admitted it to me so readily. So not only did Marsh not have an incentive to beat AIG up over the coverage for you, they had an incentive to stick all of your companies with AIG, even though it obviously was not in your best interests at least once you bought a Fund level policy. If the SJ motion does not succeed it may be time to send a visitor to Marsh with a summons and complaint."

BRS's settlement with AIG left BRS $6 million short of the $20 million of excess D&O coverage that BRS maintained Marsh was supposed to procure. Accordingly, BRS filed this action against Marsh, alleging, among other things, breach of contract and negligence. Following completion of discovery, Marsh moved for summary judgment on two grounds: (1) that BRS could not establish any breach of duty because it could not prove that the tie-in provision applied and (2) BRS could not establish proximate cause because it had settled its action against AIG. The motion court did not decide whether the tie-in provision applied, but granted summary judgment on the reasoning that BRS's settlement with AIG for a lesser amount than the $20 million was the proximate cause of BRS's damages and superseded any breach by Marsh (2008 NY Slip Op 33410[U]). This Court modified to the extent of reinstating the causes of action for breach of contract and negligence, holding that "[p]laintiffs' settlement of their underlying claim against the insurer, under circumstances in which the merits of the claim for coverage were equivocal, did not break the chain of proximate causation with respect to their claim against their broker for failure to procure appropriate coverage" (65 AD3d 865, 866 [2009]).

The litigation returned to Supreme Court, and Marsh again moved for summary judgment on the ground that the tie-in provision did not apply to limit BRS's coverage, asserting that it had raised this argument in its first motion, but that it had not been addressed by the court. The motion court found that it had not specifically addressed that issue in its prior decision, and denied the motion, finding that there were issues of fact in dispute concerning whether the stacking exclusion applied.

Marsh is back before us, arguing that "now squarely before this Court is the applicability of the Stacking Exclusion." Marsh argues that BRS cannot establish that the anti-stacking provision applied to limit coverage, and that to the extent there is any ambiguity in the provision, it must be construed in favor of BRS, the insured, to find that there was no limitation of coverage. While we affirm the motion court's denial of summary judgment to defendants, we do so on different grounds, finding that there is no issue of fact as to the applicability of the tie-in provision, that there is no ambiguity in the provision and that the provision clearly limits the liability of AISLIC when it and another AIG company provide coverage for the same claim.

Regarding Marsh's argument that the provision is ambiguous, a reading of the provision by replacing the term "Insurer"

with AISLIC dispels any ambiguity. The provision, as is relevant here, would read as follows:

> "In the event other insurance is provided to . . . a Portfolio Entity . . . and such other insurance is provided by the Insurer [AISLIC] or any other member company of American International Group, Inc., (AIG) . . . then the Insurer's [AISLIC'S] maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy."

Put plainly, AISLIC is providing $20 million in coverage to the directors and officers of BRS through this policy. However, if a portfolio entity (in this case Jitney-Jungle) is insured by AIS-LIC or any other member of AIG (National Union, which is an AIG member), and both BRS and Jitney seek coverage for the same claim, then AISLIC's maximum *aggregate* limit for all losses *combined in connection with a claim covered by this policy and the other AIG policy* will be the greater of either this policy ($20 million) or the Jitney policy ($15 million). If AISLIC's policy is all that matters in this provision, then it would make no sense for the provision to refer to other insurance provided by AISLIC *or any other member of AIG*, or to make reference to "a Claim covered, in part or in whole, by this policy and such other insurance policy issued *by AIG*" (emphasis added). For that matter, if AISLIC's policy is the only relevant policy here, then the language about how the insurer's maximum aggregate limit of liability shall not exceed the greater of this policy or the limit of such other AIG policy is meaningless because, of course, AISLIC's liability is limited by its policy and there would be no need to include that language absent a tie-in with the coverage afforded by another AIG policy.

Any awkwardness over the use of the word "Insurer" does not obscure the intent of the provision, when the word is read in the context of the entire provision. To read the provision as proffered by Marsh would render all references to AIG, AIG insurance policy, or other member company of AIG superfluous and without meaning. "Courts are obliged to interpret a contract so as to give meaning to all of its terms" (*Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [2002]; *see also Greater N.Y. Mut. Ins. Co. v Mutual Mar. Off.*, 3 AD3d 44, 50

[2003]). Marsh argues that the plain wording of the policy does no more than limit AISLIC's total exposure to a given claim. That is accurate, as far as it goes. But the crux of the matter is the formula, or method, by which AISLIC's total exposure is limited. According to this provision, all losses are combined in connection with a claim under this policy and the same claim under any other AIG policy, and that is how AISLIC's aggregate limit of liability is determined.

The reason that AIG would want to include such a tie-in provision for all policies issued by any of its member companies is clear—to limit its aggregate liability for the same claim. The reason why this is a problem for BRS is also clear. As is alleged by BRS as the underpinning for its breach of contract and negligence claims:

> "Notwithstanding that Marsh brokered nearly all of the applicable underlying insurance coverage for the portfolio companies, knew that the underlying coverage was purchased from other AIG companies, knew or should have known that other markets could have provided excess D&O coverage to BRS, and knew that a non-AIG insurance company had offered to provide excess D&O coverage that was not susceptible to the reduction in limits (since that company did not provide any underlying coverage), Marsh recommended that BRS buy the excess D&O coverage from the AIG company."

Based on the foregoing, we affirm the motion court's denial of defendants' motion for summary judgment and, searching the record, we determine that partial summary judgment should be granted in favor of plaintiffs to the extent of determining that the tie-in provision was applicable to limit the coverage afforded under the policy (see Murphy v RMTS Assoc., LLC, 71 AD3d 582, 583-584 [2010] [Appellate Division has power to search the record and award summary judgment to a nonmoving party that did not appeal]). Plaintiffs' request for sanctions is denied.

Accordingly, the order of the Supreme Court, New York County (Milton A. Tingling, J.), entered June 29, 2010, which denied defendants' second motion for summary judgment dismissing the complaint, should be modified, on the law, to grant, upon our search of the record, partial summary judgment to plaintiffs to the extent of determining that the tie-in provision was applicable to limit the coverage afforded under the policy, and otherwise affirmed, without costs.

GONZALEZ, P.J., CATTERSON, RICHTER and ROMÁN, JJ., concur.

Order, Supreme Court, New York County, entered June 29, 2010, modified, on the law, to grant, upon our search of the record, partial summary judgment to plaintiffs to the extent of determining that the tie-in provision was applicable to limit the coverage afforded under the policy, and otherwise affirmed, without costs.